# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-110

**STATE OF LOUISIANA**

**VERSUS**

**CHARLES MIDDLETON,**
**A/K/A CHARLES KIRKLAND MIDDLETON**

\*\*\*\*\*\*\*\*\*\*

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 159454
HONORABLE PATRICK L.MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### VAN H. KYZAR

### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, John E. Conery, and Van H. Kyzar, Judges.

**WRIT DENIED**

**Brenda Sibille Piccione**
**James Kirk Piccione**
**Piccione & Piccione**
**P.O. Box 3029**
**Lafayette, LA 70502-3029**
**337-233-9030**
**COUNSEL FOR APPELLANT/DEFENDANT:**
      **Charles Middleton**

**Keith Stutes**
**District Attorney**
**Alan Haney**
**Assitant District Attorney**
**15th Judicial District**
**800 South Buchanan Street**
**Lafayette, LA 70501**
**337-232-5170**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Kyzar, Judge.**

The Defendant, Charles Middleton, has filed the instant application for supervisory writs from the trial court's December 14, 2018 ruling denying the defense's request to subpoena Lafayette Parish District Attorney Keith Stutes (DA Stutes) and Assistant District Attorney Alan Haney (ADA Haney) to testify at a hearing on a motion to disqualify the prosecutors from involvement in his perjury case as alleged witnesses.

## PROCEDURAL HISTORY

On November 30, 2016, a Lafayette Parish grand jury charged Defendant, Charles Middleton, with one count of perjury, in violation of La.R.S. 14:123. Defendant is accused of testifying falsely at the August 17, 2016 grand jury investigation of Lafayette City Marshall Brian Pope. On September 25, 2018, the defense filed a motion to disqualify DA Stutes and ADA Haney, wherein he argued that the prosecutors should be recused from his case because they were witnesses to the alleged crime as they were present at the grand jury investigation wherein the alleged perjury occurred on August 17, 2016.

On October 5, 2018, the defense submitted a letter to the clerk of court requesting subpoenas for both DA Stutes and ADA Haney to testify at the hearing on the defense's motion to recuse. On October 26, 2018, the State filed a "Motion to Quash Defendant's Subpoena and Subpoena Duces Tecum for District Attorney Keith Stutes and Assistant District Attorney Alan Haney" with the trial court. The prosecution alleged the motion for subpoenas did not comport with La.Code Evid. art. 507. On November 2, 2018, the defense filed a formal motion for subpoenas together with a memorandum in support of the motion.

At the hearing on the motion for subpoenas held on December 14, 2018, the trial court denied Defendant's request in open court. Following the ruling, the defense timely gave notice of its intent to seek supervisory review and subsequently timely sought an extended return date. The trial court set the first return date for January 12, 2019, and then extended the return date for February 11, 2019. On February 12, 2019 (postmarked February 11, 2019), Defendant, through counsel, timely filed a writ application with this court seeking supervisory review of the trial court's December 14, 2018 ruling denying the defense's request to subpoena both DA Stutes and ADA Haney.

## DISCUSSION OF THE RECORD

At the December 14, 2018 hearing on the motion for subpoenas, the defense submitted the entire record into evidence as support for the motion, including the bill of indictment, the motion to suppress, and the motions to disqualify. The defense urged that the subpoenas for DA Stutes and ADA Haney, along with the documents requested therewith, were needed as they were essential to the defense, and pursuant to La.Code Evid. art. 507, the trial court was required to order the subpoenas and the production of the evidence unless it was protected by a privilege. Defense counsel affirmed that the request was not for the purpose of harassment, that the request was listed with particularity, that the request was reasonably limited in subject matter, that there were no practical alternative means to obtaining the information, and that prosecutors were subject to the article. See La.Code Evid. art. 507.

2

Defense counsel urged that, under *State v. Ward*, 11-438 (La. 4/25/11), 62 So.3d 55, criminal defendants may call prosecutors to testify at trial if the testimony is relevant, material to the theory of the defense, and not repetitious or cumulative of other evidence. Further, as it was Defendant's burden to show that the evidence was essential to the defense, the defense pointed out that both prosecutors were present and witnesses to the charged perjury, which make the prosecutors eye witnesses. Defendant argued that since intent is at issue, the prosecutors' testimony about Defendant's demeanor, such as whether Defendant was cooperative or evasive, and the circumstances surrounding Defendant's testimony would be relevant at his trial for perjury.

Defense counsel further contended that another issue at trial is whether the alleged perjury was material to Brian Pope's culpability, the criminal defendant about whose case Defendant was called to testify in the grand jury investigation. The defense claimed the prosecutors would be best qualified to testify as to the materiality of the alleged perjury. The defense then introduced into evidence the testimony of Defendant at the grand jury hearing in the Brian Pope case.

The prosecution pointed out that the Defendant had waived a jury trial, so his demeanor while testifying before the grand jury would be something best determined by the trial judge. Moreover, the prosecution urged that it is the State's burden of proof at Defendant's trial that the alleged perjury was material to the Brian Pope case. Further, the prosecution intended to call other witnesses who were involved in the Brian Pope case and, thus, able to testify as to the materiality of any false statements. The prosecution pointed out that there is an actual voice recording of the grand jury proceedings such that any evasiveness can be perceived from the

3

recording of Defendant's testimony itself, that the court reporter was an eye witness to the proceeding, that there was a transcript of the grand jury proceeding, and, further, that any questions the defense would ask DA Stutes and ADA Haney about Defendant's demeanor would be speculative.

At the conclusion of the argument, the trial court denied the request for subpoenas for ADA Haney and DA Stutes. The State noted that it had an open file policy and agreed to provide any documents related to the Brian Pope case. The parties then recorded Defendant's waiver of his right to trial by jury.

## OPINION

Defendant asserts that "[t]he trial court erred in denying the defendant's request to subpoena the prosecuting attorneys to appear at a motion to disqualify." Defendant contends that "as witnesses in the perjury case, their testimony is necessary to support [Defendant's] motion to disqualify them from also acting as prosecutors on [Defendant's perjury] charge. Their testimony is essential to the theory of the defense for Charles Middleton." Thus, the question posed to this court is actually twofold. One: are the subpoenas necessary for the hearing on the motion to disqualify DA Stutes and ADA Haney? Two: is the testimony of DA Stutes and ADA Haney necessary for Defendant to present a defense in his trial for perjury? The answer to the second question necessarily disposes of the first. An appellate court uses the abuse of discretion standard in reviewing a trial court's decision to deny a motion to subpoena a prosecuting attorney. *State v. Tucker*, 49,950 (La.App. 2 Cir. 7/8/15), 170 So.3d 394.

The defense contends the testimonies of DA Stutes and ADA Haney, as witnesses to the accused offense, are necessary for a just hearing on Defendant's motion to recuse the prosecutors as they are eye witnesses to his alleged perjury

4

offense. Defendant contends that both DA Stutes and ADA Haney were present throughout the grand jury proceedings, participated in investigating Brian Pope and Defendant, and engaged in questioning Defendant at the grand jury hearing. Defendant claims that as both prosecutors were involved in the gathering of evidence and the planning of the questions to ask Defendant, only they can testify to the events leading up to Defendant's alleged crime; thus, forming the basis for the request to disqualify them as prosecutors in the instant case.

Defendant frames the basis of the underlying perjury charge against him is as follows: Defendant denied knowing a "Mr. Redmond" during the grand jury investigation of Brian Pope; however, the investigation showed Defendant had exchanged emails and had one phone call with Jason Redmond on two separate days occurring ten months before the grand jury testimony, but Defendant had never met Mr. Redmond in person, and the two-day communication was the extent of their relationship. Though there is some evidence Defendant, in his capacity as legal counsel for the City Marshall's Office, prepared a motion to obtain sealed records on Mr. Redmond's behalf at the request of Brian Pope, the defense claims that this was prepared as a "ghost motion" in the name of "Troyce Thorla," that Defendant simply dropped off the pleading with a receptionist, that Defendant never made contact with the actual recipient, and that Defendant both billed and received payment from the City Marshall's Office for drafting the motion and referred to the drafted pleading in the billing as the "Redmond motion."

Defendant explained that his motion for subpoenas included the testimony of ADA Haney and DA Stutes, as well as all related or relevant documents in the possession of the district attorney's office at the time of Brian Pope's grand jury

5

hearing, including all documents connected with Defendant and Jason Redmond, emails between the two, invoices for legal services between Defendant and Brian Pope or the City Marshall's Office, and correspondence between Defendant and Brian Pope or the Marshall's Office regarding Redmond or the Redmond motion. Defendant contends perjury cannot be proven unless Defendant actually made a false statement to the grand jury and additionally asserts that a false statement is not perjury unless it relates to the material issue or question in controversy.

The defense urges it has shown it has a compelling need for the prosecutors' testimonies and it has exhausted all other sources of the information it seeks from the prosecutors' testimonies. Defendant asserts that he intends to ask the prosecutors about refreshing a witness's memory and whether any such methods were used to refresh Defendant's memory. Defendant asserts that his statement, without having his memory refreshed, could have been made as a result of confusion, mistake, or faulty memory, such that perjury may not exist in the instant case. The defense adds that it intends to ask the prosecutors to testify as to the materiality of Defendant's grand jury statement to the prosecution of Brian Pope. Defense counsel claims that the information cannot be obtained elsewhere as DA Stutes and ADA Haney are the only witnesses with information pertaining to the investigation of Mr. Pope. Because Defendant cannot subpoena the grand jurors, the defense asserts the two prosecutors are the only ones who can explain how Defendant's familiarity with Mr. Redmond affected the grand jury's decision to indict Mr. Pope.

Pursuant to La.Code Evid. art. 507, prosecutors can only be subpoenaed to testify under specific circumstances:

> A. General rule. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any

6

criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:

(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.

(2) The purpose of seeking the information is not to harass the attorney or his client.

(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

(4) There is no practicable alternative means of obtaining the information.

B. Waiver. Failure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.

C. Binding effect of determination; notice to client. The determination that a lawyer-client privilege is not applicable to the testimony shall not bind the client or former client unless the client or former client was given notice of the time, place, and substance of the hearing and had an opportunity fully to participate in that hearing.

D. Exceptions. This Article shall not apply in habitual offender proceedings when a lawyer is called as a witness for purposes of identification of his client or former client, or in post-conviction proceedings when a lawyer is called as a witness on the issue of ineffective assistance of the lawyer.

E. The procedural provisions and protections afforded by Paragraph A of this Article shall extend to lawyers serving as prosecutors in state, parish, or municipal courts, whether those functions are exercised in the name of the state of Louisiana or any parish or municipality, and whether the lawyer is the attorney general or assistant attorney general, a district attorney or assistant district attorney, or a parish or municipal prosecutor, and shall extend to lawyers employed by either house of the Louisiana Legislature.

7

In *State v. Tuesno*, 408 So.2d 1269, 1272-73 (La. 1982) (citations omitted), the Louisiana Supreme Court reviewed a district court's refusal to subpoena a prosecuting attorney to testify at a criminal trial:

> A trial judge's discretion in determining issues of relevancy and competency and in maintaining an orderly presentation of evidence certainly must yield to the constitutional right of the defendant to call witnesses and produce evidence in defense to a criminal charge. In our adversary system, however, the legal counsel for either party is not generally considered as an ordinary witness because of the very special professional position of counsel in the system.
>
> . . . .
>
> Defendant argues that his "purpose" in calling the assistant prosecutor was to verify that defendant does have a look-alike brother who was being prosecuted for three counts of armed robbery in another section of the court and that the location of these robberies occurred in the same area and on the same weekend. While the defendant did not state this exact purpose to the trial court, the trial court correctly noted that defendant had other means to prove the occurrence of the robberies by the brother and to prove the identity of the brother. The ruling proved eminently correct, when at the trial, the defendant stated that he was not accusing his brother of committing the armed robbery for which defendant was being tried.
>
> In essence, the defendant is contending, not that the robbery of Phillips was committed by his brother, but that Phillips' identification of defendant is patently fabricated and mistaken because the statements by Phillips to the police about the robber and about what Phillips "learned" from persons in the neighborhood more closely fitted defendant's brother than the defendant himself. This overlooks the important in-court identification of defendant when he was side by side with his brother and the street identification before and when defendant was arrested. This identification was not made by the police from Phillips' first description, but from Phillips' identifying defendant at the liquor store location where he was when the police arrested him. Phillips was extensively cross-examined as to his identification of defendant and it was within the jury's province to believe Phillips' identification.
>
> Under the circumstances of this case, we find no error in the trial court's determination that the testimony defendant sought to elicit from the assistant prosecutor was irrelevant. It was also hearsay. The fact that defendant had a look-alike brother who was being prosecuted for other armed robberies in another section of the same court, could have been, and was, established by witnesses other than the assistant prosecutor.

In another case wherein the trial court allowed subpoenas of prosecutors for a hearing on whether the district attorney should be recused, the first circuit in *State v. Gates*, 08-6, pp. 9-11 (La.App. 1 Cir. 5/15/09), 17 So.3d 41, 47-48, *writ denied*, 09-1342 (La. 10/9/09), 18 So.3d 1283, affirmed the decision of the trial court and held as follows:

> [T]he narrow issue presented in this writ is whether article 507 or article 508 of the Louisiana Code of Evidence, if either, is applicable to the subpoena requests and, if so, whether the requirements of the appropriate article have been met.
>
> The wording of articles 507 and 508 is similar, and the articles generally provide that a subpoena shall not be issued to a lawyer to appear or testify in any criminal, civil, or juvenile proceeding where the purpose is to ask the lawyer to reveal information about a client or former client obtained in the course of representing the client. However, the subpoena may be issued if, after a contradictory hearing, the trial court determines that the information sought is not protected by any applicable privilege or work product rule and the purpose of seeking the information is not to harass the attorney or his client, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, gives timely notice, and there is no practicable alternative means of obtaining the information. The court must also determine whether, in a criminal proceeding, the information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense, or in a civil or juvenile proceeding, or in an administrative investigation or hearing, the information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.
>
> We acknowledge that defendant's request to issue witness subpoenas was made pursuant to article 507, which is only applicable to criminal proceedings. The trial court, however, issued the subpoenas to the assistant district attorneys pursuant to article 508, applicable to civil proceedings. After a review of articles 507 and 508 and the particular matter presented herein, we conclude that article 507 applies in this particular case. Accordingly, defendant's request for subpoenas must be analyzed under the requirements of article 507.
>
> Herein, defendant seeks to subpoena the assistant district attorneys to testify about what they did and said during their conversations with the sheriff's attorney and defense counsel. There is no indication, and relator does not argue, that the subpoenas are requested for the purpose to ask the assistant district attorneys to reveal

9

information from conversations with the district attorney, or other assistant district attorneys, which is protected from disclosure by any applicable privilege or work product rule.

Second, in the context of the facts presented, the purpose does not appear to be to harass the district attorney or assistant district attorneys. While relator has argued that defendant created the alleged basis for his motion to recuse by filing the federal civil rights lawsuit, relator does not argue that the subpoenas were requested to cause harassment.

Third, the request for the subpoenas (and the other documents and arguments presented by defendant) specifically lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice. A review of the request further shows that defendant has narrowly limited the request to information about conversations between the assistant district attorneys, the attorney for the sheriff, and defense counsel.

Fourth, other than the testimony by other attorneys, there is no other practicable means for defendant to obtain the information he seeks. Defendant may want the testimony of the assistant district attorneys to corroborate the testimony of other witnesses. Moreover, defendant may wish to present the testimony of the assistants to avoid any evidentiary objections and issues presented if other witnesses who were not actually present during the conversations testify.

Fifth, the information sought is essential to defendant's presentation of evidence and the completion of the motion to recuse proceedings. Since the testimony directly relates to the basis of the motion to recuse, the information sought is not merely peripheral. Nor is there is any indication that the information is speculative. We note that defendant is obviously arguing prosecutorial misconduct to the charges of resisting an officer and the information sought appears related to the defense of those charges.

In *Ward*, 62 So.3d at 55-56, the supreme court again discussed the appropriateness of a criminal defendant subpoenaing the prosecutor as a witness at trial:

Although the defendant in a criminal trial has the right to prove his defense, including the calling of a prosecutor who is otherwise a competent witness, the prosecutor's testimony must be relevant and material to the theory of the defense, and it must not be privileged, repetitious, or cumulative. *See State v. Tuesno*, 408 So.2d 1269, 1273 (La. 1982). In a motion to disqualify the prosecutor, the defendant bears the burden of showing by a preponderance of the evidence that the prosecutor's testimony is essential to the completion of his defense

10

and that the information sought cannot be obtained through other available witnesses. *See State v. Bourque*, 622 So.2d 198, 216-17 (La. 1993); *State v. Tuesno*, 408 So.2d at 1272-73; *see also* La.Code Evid. art. 507(A); Rule 3.7, Rules of Professional Conduct.

In the instant case, the trial judge specifically found that the information sought by the defendant from the assistant attorney general, who had interviewed the victim on one occasion without an investigator present, could be obtained from other sources. The trial judge had the benefit of the testimony given at the hearing on the motion to disqualify, as well as the various statements made by the victim on multiple occasions. On the showing made by the defendant, we cannot say the trial judge abused her discretion in finding the defendant failed to carry his burden of proof.

In *State v. A.D.L.*, 11-1142, p. 9 (La.App. 3 Cir. 5/2/12), 92 So.3d 989, 996, this court examined the La.Code Evid. art. 507 factors of determining when an attorney can be called in reference to a criminal case, by looking at an instance when a defendant's trial attorney was called to testify at a hearing to determine whether that defendant validly waived his right to trial by jury:

> [T]he trial court did not err when it allowed trial counsel to be subpoenaed and questioned concerning whether Defendant knowingly and intelligently waived his right to a trial by jury. All of the prerequisites of article [507] were satisfied. The information sought was essential to the completion of the current appeal. The State's purpose for issuing the subpoenas was not to harass either the client or the attorney but to resolve a question ordered to be resolved by this court. The subpoenas listed the specific information sought and gave timely notice. Finally, there was no alternative means of obtaining the information. The only indication in the record that a jury trial was waived was the fact that a judge trial occurred without objection and the question was not raised on appeal--it was this court that noticed and raised the error patent.

In *State v. Tucker*, 49,950, pp. 23-27 (La.App. 2 Cir. 7/8/15), 170 So.3d 394, 412-14, the second circuit addressed whether the defendants could disqualify the district attorney and subpoena him for trial.

> By assignments No. 9 through 12[,] the defendant alleges that the trial court erred by denying his motions to subpoena the two prosecutors from his capital murder trial, testimony of a defense expert, and testimony of the defendant's prior counsel. Alicia Tucker joining in

11

this pretrial motion also raises the same assignment in her assignment of error number 4. Alicia and Lamondre claim that the prosecutors were needed as fact witnesses in order to confirm that their intention during voir dire was not to tell venire members how they should vote if selected to serve on the jury, "just as Mr. Tucker was not trying to tell Ms. Griffin how she should vote." He also intended to ask the prosecutors the relevant aspects of capital voir dire.

The trial court denied the subpoena motion essentially on grounds that the testimony of the prosecutors regarding voir dire was not relevant to the guilt or innocence of the defendant in jury tampering. The defendants claim[] that Lamondre's defense against the charge of jury tampering was that he was merely trying to instruct Ms. Griffin about voir dire and not trying to tell her how she should vote. The prosecutor's testimony would show, he reasons, that his communications with Griffin were intended to achieve the same purpose as the intention of the prosecutors during their voir dire examinations of potential jurors, and thus, the jury could conclude that[,] if the prosecutors were not jury tampering, he was not guilty of jury tampering.

An opportunity to be heard, an essential component of procedural fairness, would be an empty one if the state were permitted to exclude competent reliable evidence. *State v. Myers*, 583 So.2d 67 (La.App. 2 Cir. 1991). Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Even relevant evidence may be excluded if it would be too time consuming or would unnecessarily confuse or excite the emotions of the jury. *State v. Myers, supra*. Evidence which is not relevant is not admissible. La. C.E. art. 402. The trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. *State v. Myers, supra; State v. Burrell*, 561 So.2d 692 (La. 1990). Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103(A)(2).

. . . .

Although the defendant in a criminal trial has the right to prove his defense, including calling a prosecutor who is otherwise a competent witness, the prosecutor's testimony must be relevant and material to the theory of the defense, and it must not be privileged, repetitious, or cumulative. *State v. Ward*, 2011-0438 (La.4/25/1 1), 62 So.3d 55; *State v. Tuesno*, 408 So.2d 1269, 1273 (La.1982). The defendant bears the burden of showing by a preponderance of the evidence that the prosecutor's testimony is essential to the completion of his defense and that the information sought cannot be obtained

12

through other available witnesses. *State v. Ward, supra*; *State v. Bourque*, 622 So.2d 198, 216-17 (La. 1993); *State v. Tuesno, supra.*

. . . .

In *State v. Ward, supra*, the trial court "found that the information sought by the defendant from the assistant attorney general, who had interviewed the victim on one occasion without an investigator present, could be obtained from other sources." The Louisiana Supreme Court held that the trial judge did not abuse her discretion in finding that the defendant failed to carry his burden of proof.

. . . .

Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of that discretion. *State v. Friday*, 2010-2309 (La.App. 1 Cir. 6/17/11), 73 So.3d 913; *State v. Berry*, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 456, *writ denied*, 97-0278 (La. 10/10/97), 703 So.2d 603.

As noted above, defendants argue that the testimony of the district attorneys who prosecuted the first degree murder trial was relevant to the capital jury selection process involved in this case and relevant to their defense that Lamondre was simply trying to inform Griffin about the process.

We conclude that the trial court correctly denied the motion to subpoena the two prosecutors in Lamondre's murder trial for the stated purpose of presenting his defense. The best evidence of the intent of Lamondre's communication with Latisha is the actual communication, which was available by recording and transcript. The prosecutor's testimony regarding their intent during voir dire would have little relevance, if any, toward showing Lamondre's intent in contacting Latisha Griffin. We also agree with the trial court's conclusion that it would tend to confuse the jury regarding the elements of the offense. Even if the information were relevant to Lamondre's intended defense, questioning the district attorney's intent and purpose in questioning potential jurors during voir dire is clearly privileged and covered under the attorney work product privilege. The trial court is afforded great discretion in the admission of evidence and the defendant has made no showing that the trial court abused its discretion in excluding the testimony of the prosecutors and defense counsel in this case. This assignment of error is without merit.

In *State in the Interest of M.J.*, 17-302, pp. 2-3 (La.App. 4 Cir. 5/2/17), 220 So.3d 99, 101, *writ denied*, 07-730 (La. 5/12/17), 219 So.3d 310, (footnote omitted) (citation omitted), the fourth circuit held the State could not call defense counsel to

13

testify because there were other practical means by which to obtain the same information:

> Additionally, a subpoena of Ms. Murphy is only permissible if there is no practicable alternative means of obtaining the information to which she would testify. La. C.E. art. 507(A)(4). The State argues that only Ms. Murphy can testify as to what she observed. Nevertheless, the State's burden is not to show that no other witness can testify as to what Ms. Murphy observed, but instead to show that what she witnessed is necessary to prove the State's case. Given the number of witnesses and the audio and video recordings of the alleged incident, Ms. Murphy's testimony is not essential to the State's prosecution. For the same reason, there are practicable alternative means of obtaining the information to which she would testify. Therefore, the State has not met the requirements of subsections (A)(1) and (A)(4).

In the instant case, Defendant asserts the need for the testimonies of DA Stutes and ADA Haney for various reasons, including that they were present during the grand jury hearing and, thus, witnessed the alleged crime. However, we note that there is significant evidence of the events otherwise within the proceedings in the form of an audio recording thereof, a transcript thereof, and a verifying witness in the court reporter who transcribed the proceeding, making the evidence to be elicited from the testimony of DA Stutes and ADA Haney merely repetitious and cumulative. While Defendant further argues that the testimony of the two prosecutors is needed concerning Defendant's demeanor while testifying at the grand jury investigation, such as whether Defendant was cooperative or evasive, the best evidence of such lies in the actual recording and transcript, where voice inflections and responsiveness can be heard and seen directly by the trial judge.

Defendant claims that the testimony of DA Stutes and ADA Haney is needed to determine the circumstances surrounding his testimony (i.e., the investigation into the Brian Pope case) and that they would be the individuals best able to testify about the materiality of Defendant's statements to the culpability of Brian Pope.

14

Defendant further maintains the information cannot be obtained elsewhere because ADA Haney and DA Stutes are the only witnesses with information pertaining to the investigation of Mr. Pope, because Defendant cannot subpoena the grand jurors, and because they are the only ones who can explain how Defendant's familiarity with Mr. Redmond affected the grand jury's decision to indict Mr. Pope.

We note, however, that there has been no mention of any intent to qualify the prosecutors as expert witnesses and, further, any such opinion given by the prosecutors that the alleged false testimony of Defendant as to Mr. Redmond is or is not material to the Pope trial and investigation is objectionable as "[s]uch testimony invades the province of the [trier of fact] and usurps its function." *State v. Young*, 09-1177, p. 10 (La. 4/5/10); 35 So.3d 1042, 1048, *cert. denied*, 562 U.S. 1044 (11/15/10). Further, although maintaining that the information it seeks to introduce at trial by the testimony of the two witnesses cannot be obtained elsewhere, Defendant does not explain why the testimony of the investigators and law enforcement personnel directly involved in the Brian Pope matter would be unable to provide the information regarding the materiality of Defendant's statements.

At the hearing on the subpoena motion, the prosecution asserted that both the relevant transcripts and voice recordings are readily available to be introduced into evidence at trial; that there were other witnesses, such as the court reporter, to Defendant's statement during the Brian Pope grand jury proceeding; that there were other people involved in the prosecution of Brian Pope who could be called to testify about the materiality of any false statements by Defendant; and that any testimony by the prosecutors regarding Defendant's evasiveness or sincerity would be

15

speculative. Moreover, the defense does not explain how any testimony by the prosecutors about the investigation of Brian Pope and their part in the development of the case, as work product, would not be confidential and subject to attorney-client privilege under La.Code Evid. art. 506. Additionally, while Defendant asserts that it needs to call the prosecutors as witnesses to give testimony on the materiality of Defendant's grand jury testimony to Brian Pope's culpability, we note that the materiality of false testimony is a matter of law for determination by the trial court judge, not a factual question such as to require witness testimony. *State v. Occhipinti*, 358 So.2d 1209 (La.1978). As to Defendant's intent to commit perjury, according to *Tucker*, 170 So.3d at 414, transcripts and recordings of a communication are the best evidence of a defendant's intent: "The best evidence of the intent of Lamondre's communication with Latisha is the actual communication, which was available by recording [audio recording of a prison phone call] and transcript." In the instant case, as in *Tucker*, both transcripts and audio recordings of Defendant's statements are available to the defense.

We find that the trial court did not abuse its discretion in finding that Defendant failed to meet his burden of proving that the request for subpoenas met the requirements of La.Code Evid. art. 507, and thus denying Defendant's request to subpoena both DA Stutes and ADA Haney. It is the burden of the State to prove the Defendant's guilt and all of the elements of perjury beyond a reasonable doubt at trial. While Defendant argues that his defense hinges on the prosecutors' focus of precise questions in the grand jury proceeding and Defendant's demeanor while answering the questions, we find that the best evidence of such is the audio recording of the grand jury proceeding and the accompanying transcript. Thus, Defendant has

16

failed to establish that the evidence necessary for his defense is not available by other means.

Defendant cites multiple cases in an attempt to establish that the prosecutors here are necessary to his defense, including *State v. Marrero*, 525 So.2d 203 (La. App. 5 Cir. 1988); *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595 (1973); *United States v. Bell*, 623 F.2d 1132, (5th Cir.1980); and *State v. Williams*, 111 La. 1033 (La.1904). However, all of these cases relate to the nature of, proof of, and sufficiency of evidence necessary to convict one of perjury, not mitigation or exoneration evidence in defense thereof, and are inapplicable to whether the subpoenas of the prosecutors in this case should issue. Defendant essentially is attempting to dictate how the State should conduct its prosecution of the case. Certainly, the State could, as Defendant would prefer, recuse itself and allow the Attorney General to take over the prosecution. The DA and ADA may then wish to offer the Attorney General the use of their testimony. Defendant, however, does not have the right to dictate this alternative. Rather, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La.Code Crim.P. art. 61. As such, the trial court did not abuse its discretion in denying Defendant's request for the subpoenas of the prosecutors in this particular case.

As this is a bench trial, the trial judge will be fully able to weigh the evidence, listen to and read Defendant's grand jury testimony, assess credibility, and determine whether the State has proven its case beyond a reasonable doubt based on all the evidence admitted. We further note that the trial court has the discretion in the interest of justice to revisit the issue of either prosecutor's potential testimony as a constitutional safeguard to preserve Defendant's right to present a defense should the same be shown to be essential during trial. Accordingly, the trial court's decision

17

to quash the subpoenas of District Attorney Keith Stutes and Assistant District Attorney Alan Haney to testify at the hearing on the motion was within its discretion on the showing made at this stage of the proceedings. Defendant's writ application is thus denied.

## **WRIT DENIED**